**SPECIALTY SELECT CARE CENTER OF SAN ANTONIO, L.L.C. d/b/a Casa Rio Healthcare and Rehabilitation, Appellant**

**v.**

**Helen Arlene OWEN, Individually and on Behalf of All Wrongful Death Beneficiaries of Lily Mines, Deceased; Trinidad Virginia Luna Rangel and Ted Richard Luna, as All Wrongful Death Beneficiaries and Heirs of**

Trinidad Luna, Deceased; Carrie Lopez, on Behalf of All Wrongful Death Beneficiaries and Heirs of Porfirio Ramirez, Deceased; Sandra Mata, on Behalf of All Wrongful Death Beneficiaries and Heirs of Juanita Trinidad, Deceased; Carmen Perez as Wrongful Death Beneficiary and on Behalf of the Estate of Sally Perez, Deceased; and Reginald Bateman, as Wrongful Death Beneficiary and Heir of Doris Lewis, Deceased; Appellees

No. 04–15–00561–CV

Court of Appeals of Texas, San Antonio.

Delivered and Filed: June 29, 2016

Elizabeth Conry Davidson, Carl Kolb, Adam R. Barela, Jeffrey E. Cook, for Appellant.

Michelle Maloney, Gavin McInnis, for Appellee.

Sitting: Sandee Bryan Marion, Chief Justice, Marialyn Barnard, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Patricia O. Alvarez, Justice

In this wrongful deaths and survival actions suit, the plaintiffs' family members received allegedly negligent nursing home care from Casa Rio Healthcare and Rehabilitation. When Plaintiffs sued Casa Rio, Casa Rio moved to compel arbitration. The trial court denied the motion, and Casa Rio appeals. It argues the plaintiffs are bound to the arbitration agreements by direct benefits estoppel. We agree; the arbitration agreements are valid and enforceable against the plaintiffs, and the trial court abused its discretion by failing to compel arbitration. We reverse the trial court's order and remand this cause to the trial court with instructions to grant Casa Rio's motion to compel arbitration and to stay the related proceeding.

### Background

#### A. Forms Signed, Resident Admitted

Before the underlying suit was filed, each plaintiff admitted a family member to a Specialty Select Care Center of San

Antonio, LLC d/b/a Casa Rio Healthcare and Rehabilitation facility. The admitted family member is referred to in the forms as a resident; in this opinion we refer to the admitted person as a resident or former resident. When each of the former residents was admitted, their respective plaintiff executed a Resident Admission Agreement comprised of several forms. One of the forms was a Resident and Facility Arbitration Agreement. The arbitration agreement invokes the Federal Arbitration Act and requires the parties to arbitrate "any legal dispute, controversy, demand or claim ... that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident." The arbitration agreement expressly includes any claim for "negligence, gross negligence, malpractice, or any other claim based on any departure from accepted standards of medical or health care or safety whether sounding or in tort or in contract."

## B. Resident Injured, Suit Filed

According to Plaintiffs, each resident was injured by Casa Rio, and each resident is now deceased. When Plaintiffs sued Casa Rio, Casa Rio moved to compel arbitration.

Casa Rio insisted the Plaintiffs' wrongful death and survival action claims can only be brought by a plaintiff who is standing in the legal shoes of the deceased resident, the arbitration agreement is valid and enforceable against the decedents under the third-party beneficiary theory, and Plaintiffs are bound to arbitrate.

Plaintiffs responded with two arguments. First, they argued that Casa Rio did not prove the existence of a valid arbitration agreement because those who signed the Resident Admission Agreement had no actual or apparent authority to bind the residents, the third-party beneficiary theory—based on the resident receiving benefits under a contract—does not apply, and Plaintiffs cannot be compelled to arbitrate. Second, they argued Casa Rio waived its right to compel arbitration by substantially invoking the judicial process in a manner that prejudiced Plaintiffs.

After the trial court held a hearing and received supplemental briefs, it denied Casa Rio's motion to compel arbitration and to stay litigation, and Casa Rio appealed.

### STANDARD OF REVIEW

"Whether an arbitration agreement is enforceable is [a question of law] subject to de novo review." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig.proceeding) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003)). The party seeking to compel arbitration has the burden to prove, inter alia, a valid arbitration agreement exists. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex.2005) (orig.proceeding); *J.M. Davidson*, 128 S.W.3d at 227. If the arbitration agreement is valid and the dispute within its scope, the trial court abuses its discretion by failing to compel arbitration and stay pending litigation. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.021, .025(a) (West 2011); *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex.2010) (orig.proceeding) (per curiam); *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex.2010) (orig.proceeding) (per curiam).

### DIRECT BENEFITS ESTOPPEL ARGUED TO TRIAL COURT

On appeal, Casa Rio repeats its third-party beneficiary argument, but Casa Rio also asserts Plaintiffs are bound by another equitable estoppel theory: direct

benefits estoppel. In their brief, Plaintiffs complain that Casa Rio is raising the direct benefits estoppel argument for the first time on appeal. They insist Casa Rio did not present the issue to the trial court, and Casa Rio may not now raise the issue on appeal. *See Ochoa v. Craig,* 262 S.W.3d 29, 32 (Tex.App.–Dallas 2008, pet. denied).

As a threshold matter, we must determine whether Casa Rio presented the issue of direct benefits estoppel to the trial court.

At the hearing on the motion to compel arbitration, Casa Rio argued the third-party beneficiary theory applies. Casa Rio repeatedly argued Plaintiffs were bound by the arbitration agreement because it was part of the contract under which the residents accepted health care services from Casa Rio, and the residents could not accept benefits under the admission agreement but escape the requirement to arbitrate any dispute. During the parties' arguments, the parties and the court discussed a hypothetical addressing Casa Rio's argument that Plaintiffs are bound to arbitrate because the residents accepted health care services under the admission agreement: if a wife admits her husband to the hospital, the husband is not incapacitated, and the wife signs—without the husband's express authority—an admission agreement which includes an arbitration agreement, is the husband bound by the arbitration agreement? The parties presented the following arguments.

## A. Casa Rio's Argument

Casa Rio argued the following:

And under the FAA, if benefits are provided to [the husband] or services are provided to [the husband] under [this] hypothetical....

. . . .

The contract that [the] wife signed, and [the husband got] the benefit of the services provided under that agreement, then [the husband] is bound if—and it has an arbitration clause, . . . then [the husband] would be bound . . . whether [the wife] had real authority to do it or not, if [the husband] got the benefits of the services.

. . . .

If [the husband] gets the benefits of the agreement that [the] wife signed, then [the husband] and [the wife] are required to arbitrate, if that is in the agreement under which the services were provided.

In its argument, Casa Rio did not use the term "direct benefits estoppel," but the substance of its argument invoked each of the elements of direct benefits estoppel: (1) "a non-signatory plaintiff [ (2) ] seek[s] the benefits of a contract . . . [ (3) ] [while] simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *See Kellogg Brown & Root,* 166 S.W.3d at 739 (direct benefits estoppel elements); *see also* TEX. R. APP. P. 33.1(a)(1)(A) (requiring a party to "state[ ] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint"). Casa Rio argued each non-signatory resident (and thereby each plaintiff) was bound to the arbitration agreement contained in the resident's admission agreement because the resident "got the benefits of the services provided under the agreement." *Cf. In re Weekley Homes, L.P.,* 180 S.W.3d 127, 131 (Tex.2005) (orig.proceeding) ("[A] nonparty may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.' " (quoting *Kellogg Brown & Root,* 166 S.W.3d at 741)).

## B. Plaintiffs' Arguments

In response, Plaintiffs sought to distinguish Heritage Oaks's argument in *Sikes* that "in certain circumstances a non-signatory to an arbitration agreement can be equitably estopped from denying that his claims are arbitrable." *See Sikes v. Heritage Oaks W. Ret. Vill.*, 238 S.W.3d 807, 810 (Tex.App.–Waco 2007, pet. denied). Plaintiffs quoted *Sikes* which quoted *Kellogg Brown & Root:* "[T]his form of estoppel arises only when the plaintiff seeks 'to derive a direct benefit from the contract containing the arbitration provision.'" *See id.* (quoting *Kellogg Brown & Root*, 166 S.W.3d at 741). The form of estoppel *Kellogg Brown & Root* discussed was direct benefits estoppel: "[U]nder 'direct benefits estoppel,' ... a non-signatory should be compelled to arbitrate a claim only if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provision." *See Kellogg Brown & Root*, 166 S.W.3d at 741.

## C. Direct Benefits Estoppel Elements Was Argued to the Trial Court

Casa Rio argued Plaintiffs should be bound by the arbitration agreement; in doing so, Casa Rio argued each of the elements of direct benefits estoppel. *See Kellogg Brown & Root*, 166 S.W.3d at 739. Further, in responding to Casa Rio's argument, Plaintiffs indirectly quoted from *Kellogg Brown & Root*'s express discussion of direct benefits estoppel.

Given Casa Rio's argument and Plaintiffs' response, we conclude the doctrine of direct benefits estoppel was within the scope of the arguments presented to the trial court, and we may address the issue on appeal. *See* Tex. R. App. P. 33.1(a)(1); *cf. Ochoa*, 262 S.W.3d at 32.

We turn to the validity of the arbitration agreement.

### VALIDITY OF ARBITRATION AGREEMENT

## A. Applicable Law

 "Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate."[1] *Kellogg Brown & Root*, 166 S.W.3d at 738; *accord In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig.proceeding) ("In determining validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts."). The party "attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements." *J.M. Davidson*, 128 S.W.3d at 228; *Lone Star Bakery, Inc. v. De La Garza*, No. 04–13–00804–CV, 2014 WL 4230180, at *1 (Tex.App.–San Antonio Aug. 27, 2014) (mem.op.). Under Texas law, "[t]he elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration." *Speedemissions, Inc. v. Bear Gate, L.P.*, 404 S.W.3d 34, 43 (Tex.App.–Houston [1st Dist.] 2013, no pet.); *see Cleveland Const., Inc. v. Levco Const., Inc.*, 359 S.W.3d 843, 852 (Tex.App.–Houston [1st Dist.] 2012, pet. dism'd); *Expro Ams., LLC v. Sanguine Gas Expl., LLC*, 351 S.W.3d 915, 920 (Tex.App.–Houston [14th Dist.] 2011, pet. denied).

## B. Casa Rio's Burden to Prove Valid Arbitration Agreement

As the party seeking to compel arbitration under the FAA, Casa Rio had the burden to prove a valid arbitration agree-

---

1. The parties do not dispute that the Federal Arbitration Act applies.

ment exists for each resident. *See Kellogg Brown & Root,* 166 S.W.3d at 737; *J.M. Davidson,* 128 S.W.3d at 227.

■ At the hearing on the motion to compel arbitration, Casa Rio offered a copy of the Resident and Facility Arbitration Agreement pertaining to each resident. Each written agreement states it is an agreement to arbitrate "any legal dispute, controversy, demand or claim (the 'claim' or 'claims') that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident." *Cf. In re Macy's Tex., Inc.,* 291 S.W.3d 418, 419 (Tex.2009) (orig.proceeding) (per curiam) ("The FAA contains no requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed."). Each form was signed by one of the plaintiffs on behalf of that plaintiff's resident, and the trial court admitted each arbitration agreement.

We conclude Casa Rio met its burden to show a written agreement and the elements of offer, execution and delivery, and consideration. *See 24R,* 324 S.W.3d at 566 ("Mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement."); *Speedemissions,* 404 S.W.3d at 43.

We next address the remaining elements.

### C. Plaintiffs' Challenge to Acceptance Elements

Plaintiffs argue Casa Rio failed to prove a valid arbitration agreement exists for each resident because Casa Rio failed to prove each plaintiff had actual or apparent authority to sign the arbitration agreement on behalf of their respective resident. Plaintiffs also contend they cannot be bound to the arbitration agreement because each plaintiff signed the form not in their individual capacity, but as a representative of the resident. Plaintiffs insist that because Casa Rio has not shown that the resident authorized the plaintiff to sign the arbitration agreement on their behalf and plaintiffs did not sign the agreements in an individual capacity, Casa Rio has failed to prove, for each resident, the existence of a valid arbitration agreement.

We construe Plaintiffs' arguments as attacking the contract formation elements of acceptance, meeting of the minds, and each party's consent to the terms. *See Speedemissions,* 404 S.W.3d at 43; *Cleveland Const.,* 359 S.W.3d at 852; *see also WTG Gas Processing, L.P. v. ConocoPhillips Co.,* 309 S.W.3d 635, 643 (Tex.App.–Houston [14th Dist.] 2010) ("A 'meeting of the minds' is 'merely a mutuality subpart of the offer and acceptance elements.'" (quoting *Domingo v. Mitchell,* 257 S.W.3d 34, 40 (Tex.App.–Amarillo 2008, pet. denied))).

### D. Assent by Direct Benefits Estoppel

■ Mutual assent to an arbitration agreement "may be manifested through the doctrine of direct benefits estoppel." *Rachal v. Reitz,* 403 S.W.3d 840, 842 (Tex. 2013); *see Weekley Homes,* 180 S.W.3d at 131 ("Texas law has long recognized that nonparties may be bound to a contract under various legal principles."); *Kellogg Brown & Root,* 166 S.W.3d at 738–39; *see also G.T. Leach Builders, LLC v. Sapphire VP., LP,* 458 S.W.3d 502, 523 (Tex.2015) (quoting *Weekley Homes,* 180 S.W.3d at 129). "Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes." *Kellogg Brown & Root,* 166 S.W.3d at 739.

### E. Plaintiffs Bound to Arbitrate by Direct Benefits Estoppel

*1. Parties' Arguments*

Citing *Flores*, Casa Rio argues Plaintiffs are bound to arbitrate because each resident received benefits under the admission agreements, and an arbitration agreement each plaintiff signed on behalf of a resident expressly requires arbitration for "any legal dispute, controversy, demand or claim ... that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident." *See Specialty Select Care Ctr. of San Antonio, LLC v. Flores*, No. 04–13–00888–CV, 2015 WL 5157034 (Tex.App.–San Antonio Sept. 2, 2015, no pet.) (mem.op.). Casa Rio contends *Flores* is directly on point and controls in this appeal.[2]

Plaintiffs contend *Flores* is factually distinguishable and inapt. They argue that, unlike *Flores*, the arbitration agreements here (1) are stand-alone documents, (2) do not precondition services to the resident based on executing it, and (3) are the only contract in the record. They also argue there is no evidence their resident received any services under the arbitration agreement alone.

We review *Flores* to determine its applicability.

### 2. *Specialty Select Care Center of San Antonio, LLC v. Flores*

In *Flores*, husband José admitted wife Julie to Casa Rio for care. José signed the admission forms; Julie did not. *Id.* at *3. After Julie was injured, José sued Casa Rio; he alleged Julie was harmed by Casa Rio's negligent and grossly negligent care. *Id.* at *1. After Julie died, José amended his petition and sued as the representative of Julie's estate, and Casa Rio moved to compel arbitration. *Id.* The trial court denied the motion, but the *Flores* court reversed the trial court's order. *Id.* at *6. *Flores* assumed, without deciding, that José had no actual or apparent authority to sign the documents for Julie. *Id.* at *3. But *Flores* noted that "Julie sought and obtained substantial and direct benefits from the admissions agreement through the services she was provided," and it decided that "Julie's claims [were] subject to arbitration based on the ... theory of direct benefits estoppel." *Id.* at *5.

### 3. *Resident Admission Agreements*

Plaintiffs argue *Flores* is distinguishable because *Flores* considered the arbitration agreement and the Resident Admission Agreement "as if they were part of a single, unified instrument," id. and direct benefits estoppel does not apply here because there are no Resident Admission Agreements in the record.

#### a. *Existence of Resident Admission Agreements*

 The appellate record does not contain a copy of a Resident Admission Agreement for any of the residents, but each of the arbitration agreements, which were submitted to the trial court by affidavit, expressly references a "Resident Admission Agreement." Further, the briefs contain additional statements that we consider. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated *unless another party contradicts them.*" (emphasis added)); *Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex.2006) (per curiam) ("An appellate court normally accepts as true the facts stated in an appellate brief unless the opposing party contradicts them.").

---

**2.** The trial court did not have the benefit of *Flores* 's analysis. *See Specialty Select Care Ctr. of San Antonio, LLC v. Flores*, No. 04–13–00888–CV, 2015 WL 5157034, at *1 (Tex. App.–San Antonio Sept. 2, 2015, no pet.). The motion to compel arbitration hearing was on August 2, 2015; *Flores* issued one month later.

In Casa Rio's appellate brief, it states "[w]hen Casa Rio admitted the former residents to its facility, the former residents, or their authorized representatives, executed Resident Admission Agreements consisting of several forms" including an arbitration agreement. In Plaintiffs' brief, they do not contradict Casa Rio's statement. Thus, we accept as true Casa Rio's uncontradicted statement that a Resident Admission Agreement was executed for each of the former residents on whose behalf Plaintiffs are suing. *See* Tex. R. App. P. 38.1(g); *Western Steel*, 206 S.W.3d at 124.

### b. *Benefits Received under Resident Admission Agreements*

Without copies of the Resident Admission Agreements, we cannot state with certainty the specific terms of the admission agreements. But we need not do so to determine whether direct benefits estoppel applies and manifests the resident's consent to the arbitration agreement. *See Rachal*, 403 S.W.3d at 842 (stating that assent to an arbitration agreement "may be manifested through the doctrine of direct benefits estoppel"). We only need to determine whether the former residents received benefits under the admission agreement. *See id.*

In Plaintiffs' Second Amended Petition, they expressly state Plaintiffs are asserting "a nursing home negligence claim" against Casa Rio, and each of the injured parties was "a resident of Casa Rio." The petition also states the period (from weeks to years) that each resident resided at Casa Rio. Plaintiffs' brief states "[t]he arbitration agreements were separate from the admission agreements and admission was not conditioned upon agreeing to arbitrate; thus, the agreements to arbitrate were not part of the contractual *quid pro*

*quo* for admission to the facility and its attendant benefits."

Given (1) the undisputed fact that Casa Rio provided health care services to each resident for at least weeks, and to some for many months; (2) the accepted fact that a Resident Admission Agreement was executed for each of the former residents; and (3) Plaintiffs' acknowledgement that there was a "contractual *quid pro quo* for admission to the facility and its attendant benefits," we conclude that each of the former residents received health care services from Casa Rio under a Resident Admission Agreement.

### 4. *Valid Arbitration Agreements*

Because each former resident sought and received health care services from Casa Rio under a Resident Admission Agreement, *see Kellogg Brown & Root*, 166 S.W.3d at 739, we conclude the doctrine of direct benefits estoppel applies, *see Rachal*, 403 S.W.3d at 842, 848. Applying that doctrine, we conclude each resident manifested his or her assent to the arbitration agreement, and Casa Rio met its burden to prove the existence of a valid arbitration agreement for each resident. *See id.* at 842; *Kellogg Brown & Root*, 166 S.W.3d at 737; *J.M. Davidson*, 128 S.W.3d at 227.

### 5. *Claims within Scope of Arbitration Agreement*

Even though Casa Rio met its burden to prove a valid arbitration agreement exists for each resident, we must still determine whether Plaintiffs' claims lie within the agreement's scope. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001) (orig.proceeding) ("Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims.").

Under the arbitration agreement, "any legal dispute, controversy, demand or claim (the 'claim' or 'claims') that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration." Plaintiffs' suit is a legal dispute that comprises claims against Casa Rio. We have already concluded that Plaintiffs' claims arise out of the Resident Admission Agreement, and it is undisputed that Casa Rio provided health care services to the former residents. *See id.* Thus, we further conclude Plaintiffs' claims are within the scope of the arbitration agreement and Plaintiffs are bound by it. *See id.*

We turn to the question of waiver.

### WAIVER

█ In their response to Casa Rio's amended motion to compel arbitration, Plaintiffs also argued they are not bound to arbitrate because Casa Rio waived any right to compel arbitration by substantially invoking the litigation process to their prejudice. The trial court's order denying Casa Rio's motion to compel arbitration does not state the trial court's basis for denying the motion, so we will address the question of waiver.

### A. Law on Waiver

█ "[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *See Perry Homes v. Cull,* 258 S.W.3d 580, 589–90 (Tex.2008) (citing *In re Bank One, N.A.,* 216 S.W.3d 825, 827 (Tex.2007) (orig.proceeding) (per curiam)). Because there is a "strong presumption against waiver of arbitration, [the] hurdle [to show waiver] is a high one." *Id.* at 590. There is no bright-line test for substantial invocation; we consider

the totality of the circumstances in the context of the particular case. *Id.* at 592–93. Even "in close cases, the 'strong presumption against waiver' should govern." *Id.* at 593. If the party asserting waiver shows substantial invocation, it must also show it was prejudiced by the invocation. *See id.* at 589–90, 595.

### B. Relevant Facts, No Waiver

Casa Rio served written discovery on each of the Plaintiffs, responded to written discovery, attended a scheduling conference, and requested a hearing on its motion to compel arbitration. *Cf. id.* at 590 (listing similar actions in other cases that did not waive arbitration). Casa Rio has not filed a motion for summary judgment, motion to compel discovery, or deposed any witnesses. *Cf. id.* at 591 (listing factors used to evaluate waiver). Having considered the totality of the circumstances, we conclude Casa Rio's actions do not rise to the level of substantial invocation of the judicial process. *See id.* at 590. Because Casa Rio did not substantially invoke the judicial process, we need not address prejudice. *Cf. id.* at 597 (likening prejudice to inherent unfairness); *Flores,* 2015 WL 5157034, at *5 (same).

### CONCLUSION

Plaintiffs' health care liability claims against Casa Rio were based on the health care services the residents received from Casa Rio. Further, Plaintiffs are bound to the arbitration agreements by direct benefits estoppel given that (1) Casa Rio proved a valid arbitration agreement exists for each resident, (2) the arbitration agreement expressly references a Resident Admission Agreement, and (3) Plaintiffs did not contradict Casa Rio's statement that each plaintiff signed a Resident Admission Agreement on behalf of that plaintiff's resident. Because Plaintiffs' claims are with-

in the agreement's scope, and Casa Rio did not waive its right to compel arbitration, we necessarily conclude the trial court abused its discretion when it denied Casa Rio's motion to compel arbitration.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.021; *24R, Inc.*, 324 S.W.3d at 566; *Odyssey Healthcare, Inc.*, 310 S.W.3d at 422.

We reverse the trial court's order denying the motion to compel arbitration and remand this cause to the trial court with instructions to sign an order compelling arbitration and staying pending litigation.

**3.** Because we have determined that Plaintiffs are bound by the arbitration agreements under direct benefits estoppel and Plaintiffs' claims are within the agreement's scope, we need not address Casa Rio's second and third issues.